## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| KINDEN CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br>GUAM HEALTHCARE DEVELOPMENT, INC. DBA GUAM REGIONAL MEDICAL CITY, DCK PACIFIC GUAM, LLC. DCK WORLDWIDE, LLC AND DOES I-III,<br><br>    Defendants. | Civil Case No. CV0040-16<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter is before the Honorable Judge Michael J. Bordallo. Plaintiff Kinden Corporation (hereinafter "Kinden") is represented by Attorney Louie J. Yanza. Defendant Guam Regional Medical City (hereinafter "GRMC") is represented by Attorney Vanessa L. Williams. On September 13, 2018, GRMC filed a Motion for Summary Judgement (hereinafter "Motion") on Kinden's foreclosure of mechanic's lien, unjust enrichment, and *quantum meruit* claims. Kinden filed an opposition on May 21, 2019. GRMC filed a reply on June 4, 2019. After having received and reviewed the papers, arguments, and the file herein, the Court holds that GRMC's Motion for Summary Judgment is GRANTED in PART and DENIED in PART.

## BACKGROUND

This matter arises out of Kinden's Verified Complaint and Demand for Jury Trial (hereinafter "Complaint") filed on January 19, 2016. Multiple trial dates were set in this matter and then continued for various reasons, including attempts at mediation. The parties engaged in mediation from January 2018-April 2018, but such efforts broke down and the parties continued to move toward trial. On September 7, 2018, the Court granted leave for GRMC to file a Motion for Summary Judgment, despite GRMC missing the deadline for filing dispositive motions. At a hearing on September 4, 2018, the Court told Kinden it would have three weeks to file an opposition to any motion for summary judgment. GRMC filed its Motion on September 13, 2018. Three weeks passed, and Kinden did not file an opposition. Four days later, on October 8, 2018, the Court took GRMC's Motion under advisement.

After having reviewed GRMC's Motion in a light most favorable to Kinden, coupled with the fact that Kinden did not file an opposition, the Court granted GRMC's Motion on December 20, 2018. On January 2, 2019, Kinden filed a Motion to Reconsider the Court's Decision and Order, arguing the Court never set a deadline for Kinden to file an opposition, and if the Court believes that it did set a deadline, the manner in which the Court set the opposition deadline was unclear and confusing. On April 30, 2019, the Court granted Kinden's Motion for Reconsideration and allowed Kinden to file an opposition to the Motion for Summary Judgment. Kinden filed an opposition on May 21, 2019. On June 4, 2019, GRMC filed a Reply Brief. The Court took the issue of Summary Judgement under advisement on August 12, 2019.

## FACTS

1. GRMC initiated a new hospital construction project (hereinafter "Project"), selecting DCK Pacific Guam LLC and DCK Worldwide LLC (collectively and hereinafter "DCK") to serve as the general contractor of the Project. Compl. p. 2.

2. Kinden entered into a subcontract with DCK on or about September 10, 2012, to provide labor and materials for the Project. Compl. p. 3.

3. In the summer of 2014, the Project was delayed for a variety of reasons, including major cracks in the structure of the building following a seismic event in September 2014. Decl. of Keith L. Farrell ¶¶ 3-4.

4. To compound things, DCK failed to pay its subcontractors, and many subcontractors walked off the Project in December 2014. *Id* ¶ 4.

5. It was not until March 28, 2015, months later, that a solution was found and remediation work could begin. It took another three months for DCK to complete remediation in June 2015. *Id.*

6. Kinden alleges that as a result of these delays, it incurred extended overhead expenses. Compl. p. 3.

7. Kinden alleges that during the course of the construction, both GRMC and DCK instructed Kinden to make change orders resulting in Kinden incurring further expenses. Compl. p. 4.

8. Kinden alleges that the expenses related to extended overhead and change orders were not included in Kinden's scope of work. *Id.*

9. On or about June 11, 2015, Kinden provided preliminary notice of a mechanic's lien to GRMC. Compl. p. 5.

10. On June 25, 2015, DCK sent a "cease work" letter to all workers and subcontractors, ordering them to immediately cease work, remove tools and equipment, and secure their work areas until further notice. Decl. of Keith L. Farrell ¶ 10.

11. On October 19, 2015, Kinden recorded with the Department of Land Management a claim of mechanic's lien against the property of GRMC. Compl. Ex. 2.

12. In the mechanic's lien, Kinden claimed the amount of $2,841,309.88 as the reasonable value of all labor, materials, services, and equipment on the Project. *Id.*

13. On January 19, 2016, Kinden brought a complaint for foreclosure of mechanic's lien and unjust enrichment against GRMC and breach of contract and unjust enrichment against DCK. Compl. pp. 4-7.

14. In August 2016, GRMC determined that $1,900,999.03 of Kinden's $2,841,309.88 mechanic's lien was for Kinden's Payment Applications, all amounts claimed under retention, and a percentage of the Requests for Equitable Adjustments (hereinafter "REA"), which GRMC did not dispute, and therefore settled by paying Kinden $1,900,999.03. This left a remaining amount of $766,744.96, representing Kinden's remaining REA Claims, Standby Manpower Claims, and Payment Application #26 for $170,836.00, all of which GRMC disputes. Decl. of Margaret A. Bengzon ¶ 8.

15. On September 28, 2016, Kinden reduced its lien amount to $337,188.60 and filed an Amended Lien. *Id.* ¶ 9.

16. GRMC claims that upon its payment to Kinden of $1,900,999.03 in August 2016, it satisfied its debt to Kinden and properly settled the mechanic's lien. Kinden continues to claim $170,836.00 against GRMC for services performed and billed in Payment Application #26. Mot. For Summary Judgment pp. 13-14.

17. The parties mutually agreed to have the case mediated starting in January 2018, but by April 2018, it became apparent that mediation efforts were failing and both parties stayed arbitration pending this lawsuit. Opp. Mot. For Summary Judgment. p. 6.

## ISSUES

1. Whether Kinden exhausted all available legal remedies.

2. Whether Kinden's Mechanic's lien is valid.

3. Whether DCK was an agent of GRMC.

4. Whether Kinden may recover for labor and materials supplied to GRMC under the doctrine of *quantum meruit* and unjust enrichment.

## PRINCIPLES OF LAW

### I. Motion for Summary Judgment

Summary judgment is regulated by Rule 56 of the Guam Rules of Civil Procedure. Guam R. Civ. P. 56. Summary Judgment is appropriate if the pleadings, deposition, interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c); *Izuka Corp. v. Kawasho International, (Guam), Inc.,* 1997 Guam 10 ¶ 7. In addition,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (citations omitted).

In rendering its decision on a motion for summary judgment, a court must draw inferences and view the evidence in a light most favorable to the non-moving party. *Bank of Guam v. Flores,* 2004 Guam 25. If, however, the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the pleading but must produce at least some significant probative evidence to support the pleading. *Edwards v. Pacific Financial Corporation,* 2000 Guam 27 ¶ 7. Consequently, a court's "ultimate inquiry is to determine whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Id.*

## II. Mechanic's Lien

Any corporation that provides labor, materials, equipment, or services that are used to improve real property shall have a lien on such property for the payment of the value of such labor, materials, equipment, or service. 7 G.C.A. § 33101. The corporation will have lien rights whether the labor, materials, equipment, or services were performed or furnished at the request of the property's owner or any person acting with the owner's authority. *Id.*

### a. Preliminary Notice

Except when the lienholder is under direct contract with property owner, Guam law requires that a lien claimant provide the property owner a written preliminary notice of the lien within twenty (20) days after the claimant has first furnished labor and materials. 7 G.C.A. § 33106(a).

If the claimant provides notice twenty (20) days after labor and materials were first furnished, then the claimant will be entitled to record a lien only for labor and materials furnished within twenty (20) days prior to the service of the notice, and any time thereafter. 7 G.C.A. § 33106(b).

### b. Delay Damages

As a matter of law, a mechanic's lien shall be for the reasonable value of services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less. 7. G.C.A. § 33102.

### c. Pre-Judgment Interest

The standard for recovery of pre-judgment interest "is whether the defendant actually knows the amount owed or from reasonably available information could the defendant have computed that amount." *Guam Top Builders Inc. v. Tanota Partners,* 2012 Guam 12 ¶ 68. Pre-judgment interest is warranted "where the amount due ... is fixed by the terms of the contract or

is readily ascertainable by reference to well-established market values." *Id.* However, pre-judgment interest is not allowable "where there is a dispute between the parties concerning the basis of computation of damages so that the amount of damages depends upon a judicial determination based on conflicting evidence." *Id.*

### III.    *Quantum Meruit*/Unjust Enrichment

*Quantum meruit* is an equitable remedy. *Angino & Rovner v. Jeffrey R. Lessin & Associates,* 131 A.3d 502 (Pa. Super. 2016). *Quantum meruit* has been defined to include recovery allowed where one party's performance occurs in the absence of a contract. *Losli v. Foster,* 37 Wash.2d 220, 222 P.2d 824 (1950). "*Quantum meruit* relief is founded upon the legal fiction of an implied contract. This fiction cannot be maintained, however, when the rights of the parties are described in a written contract." *Corn v. Greco,* 694 So.2d 833, 934 (Fla. 2nd DCA 1997).

The Supreme Court of Guam has held that in order for a *quantum meruit* claim to be valid it must satisfy three elements. *Tanaguchi-Ruth & Associates v. MDI Guam Corp.,* 2005 Guam 7 ¶ 27. The three elements are (1) the performance of services by the plaintiff, (2) the receipt of the benefit of those services by the defendant, and (3) the unjustness of the defendant's retention of that benefit without compensating the plaintiff. *Id.*

Unjust enrichment is an equitable remedy, found where an individual receives a benefit which would be unconscionable for him to retain. *Clapp v. Goffstown Sch. Dist.,* 159 N.H. 206, 977 A.2d 1021 (2009). "Unjust enrichment" occurs when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying. *Dowling Family P'ship v. Midland Farms,* 2015 S.D. 50, 865 N.W.2d 854. "A person is enriched if the person receives a benefit at another's expense." *Tanaguchi-Ruth + Assocs. v. MDI Guam Corp.,* 2005 Guam 7 ¶ 29 (Guam Apr. 1, 2005).

### a. Exhaustion of Legal Remedies

As a general rule, and subject to equitable considerations, exhaustion of available, adequate legal remedies is required as a prerequisite to a court's exercise of equitable jurisdiction. In order for a party to seek an equitable remedy under the law, it must first dispose of its legal remedies. *Aurora Loan Services, LLC v. Lopa*, 88 A.D.3d 929, 932 N.Y.S.2d 496 (2d Dep't 2011); *Bivens v. Salt Lake City Corporation*, 2017 UT 67, 416 P.3d 338 (Utah 2017). A failure to exhaust available legal remedies, while pursuing an indirect equitable claim, is considered to render equitable jurisdiction both premature and improper. *Maloney v. Therm Alum Industries, Corp.*, 636 So. 2d 767 (Fla. 4th DCA 1994).

Once it has been determined that there is a valid reason for applying the exhaustion of remedies doctrine, the exceptions to the rule must be considered. If resort to the prescribed administrative procedures would be futile or inadequate to prevent irreparable injury, or if blatant violations of constitutional or statutory rights have already occurred, the exhaustion of administrative remedies should not be required. *Rhodes v. United States*, 574 F.2d 1179 (5th Cir. 1978); *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231 (3d Cir. 1980); *Barnes v. Chatterton*, 515 F.2d 916 at 920-21.

### b. Agency

"Agency is a legal relationship between a principal and an agent. It is a fiduciary relationship which results from manifestation of consent of one person to allow another to act on his or her behalf and subject to his or her control, and consent by the other so to act. The agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority" *Maurillo v. Park Slope U–Haul*, 194 A.D.2d 142, 146, 606 N.Y.S.2d 243 [citations omitted]; *see G.K. Alan Assoc. Inc. v. Lazzari*, 66 A.D.3d 830, 833, 887 N.Y.S.2d 233; *Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 552, 813 N.Y.S.2d 114.

"[A]n agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: 1. 'manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal,' 2. 'the agent's acceptance of the arrangement,' and 3. 'the parties understood that the principal will control the undertaking.' " *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 870 (5th Cir. 2000) (quoting *Forest Oil Corp. v. Tenneco, Inc.*, 626 F. Supp. 917, 921 (S.D. Miss. 1986)).

## ANALYSIS

### I.  Mechanic's Lien

The parties dispute the validity of the mechanic's lien that Kinden initially filed with the Department of Land Management on October 19, 2015.  The initial lien amount was for $2,841,309.88. After a payment in the amount of $1,900,999.03 by GRMC towards the lien, Kinden filed an Amended Mechanic's Lien for $337,188.60.

The amended lien consists of amounts for labor and materials as well as delay damages and pre-judgment interest associated with: (1) the main contract, (2) CUP building, and (3) extended overhead and manpower standby.  Out of the $337,188.60.00, $1,729.63 is for labor and materials and the remaining $335,458.96 is for delay damages and pre-judgment interest.

### a.  Preliminary Notice Requirement

GRMC alleges that the lien is invalid because it lists items that are outside the statutory recovery period.  Kinden gave preliminary notice to GRMC on or about June 11, 2015. As such, GRMC argues that after applying the "20-day rule" of 7 G.C.A §33106(b) to the preliminary notice date, Kinden may not recover for any labor and materials furnished to GRMC before May 23, 2015. GRMC argues that the $1,729.63 in labor and materials were furnished to GRMC before May 23, 2015.

Kinden claims that its mechanic's lien is valid. Kinden concedes the date of preliminary notice; however, it argues that the preliminary notice requirement does not apply to this case because GRMC had actual knowledge of Kinden's work on the Project.

To support this argument, Kinden cites *Kim v. J.F. Enterprises,* 42 Cal.App. 4th 849 (1996). In interpreting California's mechanics lien statute, which is nearly identical to Guam's, the *Kim* court stated that preliminary notice was not required because the contractors were under "direct contract with the owners." *Id.* Both parties in this case agree that Kinden was not under direct contract with GRMC; however, the court in *Kim* ruled that according to the California statute, a presumption may be made that would deem two parties to be "under direct contract." The *Kim* court stated:

> The rationale for excepting those under direct contract with the owner from serving a preliminary notice is that "the owner is generally apprised of potential lien claims by those with whom he deals directly, whereas it is difficult for him to learn of potential liens by those not under direct contract. [Citation.]" *Truestone, Inc. v. Simi* West Industrial *Park 11,* 163 CalApp.3d 715 at p. 722, 209 Cal.Rptr. 757.)
>
> …
>
> Section 3129 states that every work of improvement constructed, labor performed or materials furnished "with the knowledge of the owner" shall be held to have been constructed, performed, or furnished at the instance of the owner and hence "under direct contract with the owner" within Section 3097. *Truestone, Inc. v. SimiWest Industrial Park II,* 163 Cal.App.3d at p. 722, 209 Cal.Rptr. 757. Under those circumstances even though the contract for a work of improvement is with a lessee, and not the owner, no preliminary notice is required because of the owner's knowledge. (*Ibid.*)

*Id* at 856.

Kinden's argument lies in the fact that because GRMC requested and was aware that Kinden was performing work to improve the Project, a presumption can be made that GRMC and Kinden were "under direct contract"; therefore, the lack of a timely preliminary notice cannot be used as a means to invalidate the lien.

The preliminary notice requirement and whether it applies has a significant impact on the value of the lien. The Court is aware that GRMC and Kinden did not enter into an express contract with each other. However, the Court is also aware that under certain circumstances, the nature of the interactions between two parties may reasonably suggest otherwise. Therefore, the Court finds that as to the preliminary notice requirement under 7 G.C.A §33106(b), a triable issue does exist as to whether the degree of GRMC's awareness of Kinden's actions on the Project is sufficient enough to deem GRMC and Kinden "under direct contract."

For this reason, the Court holds that Kinden's alleged failure to file a timely mechanic's lien does not constitute grounds for summary judgment on Kinden's mechanic's lien claim.

### b. Delay Damages

GRMC argues that the lien is invalid because it contains amounts that reflect delay damages. Kinden argues that the delay damages incurred by Kinden were anticipated by the contract in Section 8 and GRMC therefore has not paid Kinden the agreed upon price.

Section 8 of the Kinden-DCK contract provides that:

> [i]f the Subcontractor is delayed in the prosecution of its work due to the acts of the Owner and/or its agents, other independent contractors of the Owner, the Contractor, or the Contractor's other subcontractors and the Subcontractor suffers delay, acceleration, loss of efficiency, extended overhead, or any other type of damages therefrom, the Contractor agrees to transmit to the Owners, subcontractors, or other entity any such claims submitted to it by the Subcontractor. Likewise, if the Subcontractor has any other type of claim for damages including, but not limited to, differing site conditions, change in scope of work, disruption, loss of efficiency, cumulative impact of change orders, payment delay, or any other type of damages caused by the Owner, other independent contractors of the Owner, the Contract, the Contractor's other subcontractors, or any other such entity, the Contractor agrees to transmit to the Owner, other subcontractors, or other entity any such claims submitted to it by the Subcontractor. Any claim submitted by Subcontractor shall be accompanied by sufficient detail and certification (if applicable) that validates the claim's legitimacy such that enables Contractor to reasonably transmit the claim to Owner or others.

*Id.*

"The function of the mechanic's lien is to secure repayment for services and materials actually contributed to the site, not to recover for consequential damages." *Lambert v. Superior Court*, 228 Cal. App.3d 383, 389. Based on *Lambert*, GRMC argues that Kinden's delay damages are not recoverable under the lien because they are consequential damages and not amounts that reflect materials or services that were actually contributed to the Project.

Kinden claims that *Lambert* does not apply to the matter at hand, as the facts in *Lambert* and the matter at hand are easily distinguishable. In *Lambert*, the contractor had been paid in full by the owner; however, GRMC has not paid Kinden the contract price agreed upon by Kinden and DCK. Kinden argues that unlike the contractor in *Lambert*, Kinden is not seeking anything over the contract price.

The Court finds that whether a property owner has paid the full contract price is immaterial to whether delay damages may be considered as part of the reasonable value of labor and services that are incorporated into a mechanic's lien. The Court holds that Guam's mechanic lien statute does not permit a lien for delay damages. Summary Judgment is therefore granted on Kinden's mechanics lien to the extent the claim seeks delay damages.

### c. Pre-Judgment Interest

GRMC argues that Kinden's lien is also invalid because it contains impermissible pre-judgment interest amounts. GRMC claims that pre-judgement interest is recoverable under allowable claims only when the claims are liquidated. *Burnett v. Glas*, 154 Cal. 249, 97 P. 423, 427 (1908); *Macomber v. Bigelow*, 126 Cal. 9, 58 P.312 (1809). "Liquidated damages" are those which are certain by computation from the face of the contract, or which might be made certain by reference to well-established market values plus computations. *Lineman v. Schmid*, 32 Cal.2d

204, 209. GRMC contends that because Kinden's claims in this case are unliquidated, pre-judgment interests on those claims are prohibited.

Kinden claims that the fact that the amount owed to Kinden under the lien is in dispute does not render the claim unliquidated. Kinden further argues that the claim is unliquidated because amongst other reasons, all the necessary figures are available to calculate the amount due to Kinden and therefore its claim is not unliquidated.

The Court acknowledges that Kinden has stopped supplying GRMC with any materials or labor in any way and all the services provided to GRMC by Kinden are all on the record. As such, Kinden claims that all the necessary information to compute the amount owed, if any, to Kinden has been brought to the attention of GRMC and all that is left is mere calculation. Although the amount owed to Kinden is in dispute, the Court holds that Kinden's claims are not unliquidated because all necessary amounts to calculate those claims have been provided to GRMC. Therefore, the Court holds that Kinden's claim for pre-judgment interest is not invalid as a matter of law.

## II.     *Quantum Meruit* /Unjust Enrichment

In its complaint, Kinden seeks recovery from GRMC under the theories of *quantum meruit* and unjust enrichment. "*Quantum meruit*" is an equitable remedy entitling a person who has rendered services to recover payment for the reasonable value of those services. *Hughes and Coleman PLLC v. Chambers*, 526 S.W.3d 70, 74. The theory of "unjust enrichment" is an equitable doctrine that the benefited party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay. *Bedsole v. Action Outdoor Advert. JV, LLC*, 325 Ga. App. 194, 750 S.E.2d 445 (2013). GRMC argues that the theories of *quantum meruit* and unjust enrichment do not apply because GRMC has not unjustly benefited in any way due to the fact that they already paid for the labor and materials that Kinden has supplied.

#### a. Exhaustion of Legal Remedies

As a preliminary matter, GRMC argues that Kinden cannot pursue the equitable claims of *quantum meruit* and unjust enrichment unless it first exhausts all available legal remedies. To support this argument, GRMC cites *Rogers v. Whitson* 228 Cal.App.2d 662 (1964) and *Truestone, Inc. v. Simi West Industrial Park II* 163 Cal.App.3d 715. In *Rogers*, a subcontractor was hired by a general contractor to provide equipment for a construction project. After not getting compensated by the general contractor for incurred costs for the construction project, the subcontractor sought relief from the property owner. The California Court of Appeals held that due to a lack of privity between the property owner and the subcontractor, the property owner is not personally liable to the subcontractor. Furthermore, the California Court of Appeals held that the property owner is not unjustly enriched because the subcontractor had alternative legal remedies such as seeking recovery from the general contractor with whom he stood in contractual privity.

In *Truestone*, a subcontractor sought equitable relief from the property owner after the general contractor failed to pay the subcontractor for materials that he delivered to the construction project on the owner's property. Citing *Rogers*, the California Court of Appeals held that if there is no contract between the subcontractor and the owner, the subcontractor may not recover under an unjust enrichment theory against the owner.

In September 2012, Kinden and DCK entered into a written contract. GRMC argues that Section 2, F, Paragraph 30(b)(i) of the contract clearly provides Kinden with an adequate legal remedy which it has failed to exercise.

The Kinden-DCK subcontract provides:

> If subcontractor shall claim that any such change, or any other action, omission, event, or condition, alters its scope of work or increases the cost or time of performance of its work, it shall as an essential term of this Agreement, notify the

Contractor in writing within Ten (10) working days of the receipt of such order or such action, omission, event, or condition giving rise to the claim, or such claim shall be barred.

Within Five (5) working days following the issuance of such notice, the Subcontractor must specifically identify the amount, provide a breakdown or calculation of the amount, and the basis and justification for the claim with sufficient detail and precision for the Contractor to evaluate and determine the merits of the claim for presentation of such claim to the Owner or other responsible parties. Subcontractor acknowledges and agrees that such notice is essential for the Contractor and its Surety (if applicable) to manage the work, manage and report the financial status of the work, mitigate impact of changes, preserve the rights against the Owners and other Subcontractors, and to evaluate the exercise of its rights including but not limited to termination for convenience.

An equitable adjustment, if appropriate, in the Subcontract price shall be agreed upon in writing by the Parties, but Subcontractor shall not delay proceeding with the Work as changed pending such agreement. If the parties are unable to agree upon the amount of the addition to or the reduction from the subcontract price or time, the Subcontractor shall nevertheless proceed with the Work, and the determination of such amount of the addition or reduction shall be determined in accordance with The written contract states that Kinden would provide labor and materials for the Project.

Section 2, F, Paragraph 30(b)(i).

In response, Kinden argues that *Rogers* and *Truestone* are inapt because they do not address whether a construction manager is an agent of the owner. Kinden relies on *Aladdin Construction Co. v. John Hancock Life Insurance*, 914 So.2d 169 (Miss. 2005) to argue that the lack of privity between a property owner and subcontractor does not bar the subcontractor from seeking relief against the owner. Furthermore, Kinden argues that if the circumstances are such that an agency relationship existed between the owner and contractor, the subcontractor may hold the owner responsible for the acts of the contractor.

In accordance with the subcontract between DCK and Kinden, Kinden was to submit invoices to DCK who would then review and approve the invoices before forwarding them to GRMC for payment. GRMC would then release a check to DCK who then would draw a check to Kinden. This system naturally made all payments received by Kinden for work done on the

Project dependent upon DCK. Kinden argues that this payment system strongly implied a principal-agent relationship between GRMC and DCK in which DCK was the disbursing agent for GRMC. To support this argument, Kinden has referenced the construction management agreement between GRMC and DCK. The contract states:

> "...[T]he Construction Manager shall be the Owner's agent to the extent specifically provided in this Agreement, shall exercise its skill and judgement in furnishing construction administrative and management services, and shall perform its services in an economical and timely manner."

Construction Managing Agreement § 2.1.

Kinden agrees that GRMC paid DCK the $170,188.60 that was appropriated for Kinden's payment Application #26. However, Kinden never received payment from DCK. Kinden asserts that a principal is liable even for the fraudulent acts of its agent when those acts are within the scope of his authority. *See Grigsby v. Hagler*, 25 Cal.App. 2d 714, 715 (1938). Kinden also states that the determining factor in ascertaining whether an agent's acts falls "within the scope of the agency" is not whether the principal authorized, benefited, or fulfilled the job responsibilities, but whether the risk of such an act is "typical of or broadly incidental" to the principal's enterprise. *Unruh-Haxton v. Regents of University of California*, 162 Cal.App.4th 343, 368 (2008). As such, Kinden argues GRMC and DCK were in an agency relationship, and Kinden can hold GRMC responsible for DCK's negligence in not paying Kinden the $170,188.60 which was appropriated for and owed to Kinden.

It is undisputed that Kinden and DCK have agreed to stay arbitration. However, there is still Section 2, F, Paragraph 30(b)(i) of the contract that GRMC argues is legally adequate to resolve Kinden's disputes in this matter. The Court has reviewed Section 2, F, Paragraph 30(b)(i) of the contract between Kinden and DCK. The Court holds that Section 2, F, Paragraph 30(b)(i) includes language that is clear enough to provide Kinden with a legal remedy for the

compensation Kinden seeks. Furthermore, Kinden never disputes the legal adequacy of any of the contract provisions of the subcontract nor have they made any arguments or presented any evidence to show that DCK is insolvent to the extent that it cannot meet any of its contractual obligations.

Lastly, Court has reviewed Kinden's argument that GRMC may be held liable for the acts of DCK under an agency relationship. Although the Court holds that the facts may be present that such a relationship exists, the Court finds that the agency issue in *Aladdin* only gave rise to a contractual claim but not an equitable claim. As both *quantum meruit* and unjust enrichment are equitable claims, they cannot be pursued unless Kinden can demonstrate that it has exhausted its contractual remedies. As such, the Court grants summary judgment on Kinden's *quantum meruit* and unjust enrichment claims.

CONCLUSION

Based on the foregoing, GRMC's Motion for Summary Judgment is GRANTED in PART and DENIED in PART.

SO ORDERED, this ___4th___ day of __Nov_____ 2019.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I ac... rdge that a copy of the
reto was placed in the
TARPLEY, L. YANZA
V. Williams
11/4/19 9AM
Deputy Clerk, Superior Court of Guam